JUSTICE RICE
dissenting.
¶79 I dissent. The Court has applied Schlup in a manner neither required nor contemplated by that 1995 decision, and, in so doing, has improperly re-contoured our postconviction jurisprudence. I would affirm the District Court.
¶80 For a proper understanding of the nature and effect of the Schlup decision, it is necessary to recognize the following principles and developments:
¶81 1. Schlup was a capital case. Schlup’s death sentence was the *403 driving factor in the Court’s adoption of a new miscarriage of justice, or “innocence” standard. “The quintessential miscarriage of justice is the execution of a person who is entirely innocent. ... The paramount importance of avoiding the injustice of executing one who is actually innocent thus requires application of the Carrier standard.... [T]he Carrier ‘probably resulted’ standard rather than the more stringent Sawyer standard must govern the miscarriage of justice inquiry when a petitioner who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar....” Schlup, 513 U.S. at 324-27, 115 S.Ct. at 866-67, 130 L.Ed.2d at 834-36.
¶82 On October 14, 2003, the high court granted certiorari in a Fifth Circuit Court of Appeals case, Haley v. Cockrell (5th Cir. 2002), 306 F.3d 257, cert. granted, 124 S.Ct. 385, 2003 WL 21456653,which held that the Schlup innocence exception to the bar on successive federal habeas proceedings is not limited in its application to capital cases, but is also to be applied to noncapital sentencing cases involving a “career offender or other habitual offender.” Haley, 306 F.3d at 266. The Seventh, Eighth and Tenth Circuits have already held that the Schlup standard does not apply in such circumstances. Haley, 306 F.3d at 265.
¶83 Regardless of the high court’s resolution of this sentencing issue, however, Pope was not sentenced to death, does not challenge his sentence and, therefore, does not come within the holdings of either Schlup or Haley.
¶84 2. Schlup addressed the statutory bar to successive federal habeas petitions. Schlup defined a standard by which the federal statutory bar on successive habeas petitions, 28 U.S.C. § 2255, could be avoided. “Schlup is a federal habeas corpus case involving a successive federal habeas petition and the federal test for when the bar against a successive petition can be avoided in order to permit the resolution of underlying constitutional claims on the merits.” Beach v. Day (1996), 275 Mont. 370, 375, 913 P.2d 622, 625. Unlike the federal statute, Montana law contains no bar on successive habeas corpus petitions. See § 46-22-101, et seq., MCA (1993). Further, Montana law does not bar the filing of successive postconviction relief petitions, but rather limits the issues raised in a successive petition to those which “could not reasonably been raised in the original” petition. Section 46-21-105(1), MCA (1993). This is Pope’s first petition for postconviction relief, and, therefore, neither Montana’s rule governing successive postconviction relief petitions-nor Schlup’s arguably analogous rule for successive federal habeas petitions-is applicable here.
¶85 3. Schlup has not been applied to the time bar on federal *404 habeas petitions. Although application of the Schlup standard to the statute of limitations imposed by 28 U.S.C. § 2244(d)(1) upon federal habeas corpus petitions has been suggested, see Limin Zheng, Actual Innocence as a Gateway Through the Statute-of-Limitations Bar on the Filing of Federal Habeas Corpus Petitions, 90 Cal. L. Rev. 2101 (2002), the federal courts have not yet done so.[2] If Schlup has not been applied to the federal time bar on habeas petitions, then neither can this Court be compelled to apply Schlup to the Montana time bar on postconviction petitions.
¶86 4. Schlup did not displace state procedural bars. “The Supreme Court’s holding in Schlup v. Helo, supra, does not permit a petitioner to disregard a State’s established postconviction procedures-or render the State powerless to insist on compliance with its procedures-whenever a claim of actual innocence is made.” Bates v. Commonwealth (Mass. 2001), 751 N.E.2d 843, 845; see also Hays v. State (Idaho 1999), 975 P.2d 1181, 1184 (petitioner’s Schlup claim did not excuse his failure to provide “reason or excuse as to why he did not raise this claim in his application for post-conviction relief’ under state postconviction statute). Undoubtedly, the reasoning of Schlup may be properly considered in the ongoing development of actual innocence standards under state procedural bars, but blind adoption is not mandated. See, Gregory A. McCarthy, Federal Habeas Corpus: A Backdrop for Providing a State Post-Conviction Remedy for Actual Innocence, 37 AZ Attorney 22 (2000) (referencing Schlup in a discussion of whether Carrier, Sawyer or Herrera should serve as the actual innocence standard for Arizona’s postconviction remedy)[3].
¶87 Further, the actions of Congress will certainly influence the developing jurisprudence regarding an actual innocence standard. The Schlup rule has already been modified, at least slightly, by subsequent federal legislation. President Clinton’s signing into law of the Antiterrorism and Effective Death Penalty Act of 1996 revised the innocence exception to the bar on successive federal habeas petitions under 28 U.S.C. § 2255. “The Antiterrorism and Effective Death *405 Penalty Act of 1996 (‘AEDPA’), Pub. L. No. 104-132, §§ 105,110 Stat. 1214, provides new review procedures and more stringent standards for the review of second or successive motions pursuant to § 2255.” Robinson v. United States (S. D. N.Y. Jan. 26, 1998), 1998 U.S. Dist. LEXIS 629 at *2; see also Roldan v. United States (7th Cir. 1996), 96 F.3d 1013, 1014.
¶88 Therefore, with a proper understanding of Schlup’s applicability to death sentence cases involving successive federal habeas petitions, and its failure to displace state procedural bars, particularly a state time bar, I conclude that Pope’s claim can properly be determined on the basis of our existing postconviction jurisprudence. We have held that “the postconviction statute of limitations is a jurisdictional limit on litigation and is waived only when there is a clear miscarriage of justice, one so obvious that the judgment is rendered a complete nullity.” State v. Rosales, 2000 MT 89, ¶ 7,299 Mont. 266, ¶ 7, 999 P.2d 313, ¶7. Further, “[t]he fundamental miscarriage of justice exception is concerned with actual and not legal innocence.” State v. Redcrow, 1999 MT 95, ¶ 33, 294 Mont. 252, ¶ 33, 980 P.2d 622, ¶ 33.
¶89 Pope does not even attempt to assert he is actually innocent, and of course, he cannot, having confessed to the crime on two occasions. Although the confessions could not be used by the State to prove the charge against him, as they were obtained in the context of his plea bargain agreement, they are nonetheless evidence of his guilt that can be used by the State to defend against Pope’s claim that he is “actually innocent.” See Bousley v. United States (1998), 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (“actual innocence” claims are subject to rebuttal by any evidence of the petitioner’s guilt, even if inadmissible against the petitioner at trial). In any event, Pope has not and cannot meet the standard of actual innocence, and, therefore, his petition should be denied.
¶90 Pope nonetheless argues that he should be “considered” to be “innocent” because of new evidence that he did not commit the crime, combined with his claim that his trial was constitutionally defective, an argument which the Court adopts based upon Schlup. However, for the reasons expressed above, Schlup is inapplicable, and does not save Pope’s claim. As the Court acknowledges, Pope’s defective trial claims were record based. Pope could have appealed the faulty charge and instruction, but he did not. The pending DNA report from Cellmark Laboratories was known to Pope before trial, and he could have demanded dismissal of the charges for failure to produce evidence, requested a continuance of the trial until the evidence was produced, *406 or objected to the prehminary DNA report because of its incompleteness. He did not. With a trial challenge, he could have raised the issues on appeal. He did not. He has offered no reason or excuse for his failure to challenge on appeal the issues he now raises in a postconviction petition, which was untimely filed. Pursuant to § 46-21-105(2), MCA (1993), his failure to challenge these issues bars him from doing so now. Further, we have held that one in Pope’s position is also barred from doing so by the operation of res judicata. Beach, 275 Mont. at 373, 913 P.2d at 624. Pope’s conviction is final, and it is valid.
¶91 “Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice.” United States v. Timmreck (1979), 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed 2d 634, 639. Pope was charged with a vicious crime which he committed ten years ago last month. The law clearly calls for an end, and I would so order.
¶92 I dissent.
CHIEF JUSTICE GRAY joins in the dissent of JUSTICE RICE.

 The Ninth Circuit Court of Appeals refused to apply the actual innocence exception to the federal time bar in a one-page unpublished opinion issued in Burton v. Fairman, 2001 WL 925513 (9th Cir. Aug. 15, 2001), cert. denied, 2002 WL 407209 (March 18, 2002), as noted within the Zheng article.

 Murray v. Carrier (1986), 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397; Sawyer v. Whitney (1992), 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269; Herrera v. Collins (1993), 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203.